UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| STEPHEN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-cv-00001-JPH-MJD |
| ) | |
| HENDERSON C.O., ) | |
| HALL Sgt., ) | |
| ALEXANDER C.O., ) | |
| ) | |
| Defendants. ) | |

**FINAL PRETRIAL ORDER**

A jury trial will begin on **Tuesday, January 14, 2025, at 9:00 a.m.** at the United States Courthouse in Terre Haute, Indiana. The trial is expected to last three days. Counsel must be present and ready to begin trial at **8:30 a.m.** The courtroom will open at **8:00 a.m.**

**A.     Jury selection**

Juror questionnaires will be available for the parties to pick up in Room 131 on **January 13, 2025 at noon**. The Court will conduct voir dire using the questions provided by the Court, dkt. 158-1, and the parties' agreed-to supplemental questions, dkts. 168 and 173. The Court will docket a final consolidated list of voir dire questions before trial. Counsel may ask follow-up questions to individual members of the venire, limited to the topics in the juror questionnaires and responses to the Court's questions.

The venire will then be excused, and the Court will rule on hardship excuses and challenges for cause. Each side will have three peremptory

strikes, which the parties will exercise simultaneously in writing. After peremptory strikes have been exercised, the remaining members of the venire with the eight lowest numbers will be the jury. The Court will seat eight jurors with no alternates.

The Court will use the joint case synopsis that was previously provided by the parties. Dkt. 201.

**B.   Jury instructions**

The Court will use the preliminary jury instructions that were docketed at dkt. 158-2, including Defendants' unobjected-to modification to preliminary instruction number 5 at dkt. 167. The Court will also use Defendants' proposed supplemental questions at dkt. 165, except for proposed supplemental instruction number 3. Mr. Johnson's objection to supplemental instruction number 3 was **SUSTAINED**. The Court will docket a final consolidated list of preliminary instructions before trial.

The Court will hold an instructions conference during trial at which counsel will have the opportunity to be heard and object to the Court's proposed final jury instructions. The Court will provide counsel with a complete set of the Court's proposed final consolidated jury instructions before the instructions conference. At the instructions conference, the Court will also review and finalize the verdict form and designate the time limit for final arguments (presumptively in the range of 30-45 minutes).

**C.   Opening statements**

Each party will have up to 10 minutes for opening statements.

### D. Stipulations

The parties have filed a stipulation that Defendants acted under color of state law. Dkt. 203. This will be read into the record, and then the parties must move for its admission at trial.

### E. Separation of witnesses

Mr. Johnson filed an unopposed motion to separate non-party witnesses at trial. Dkt. [186]. That motion was **GRANTED**. The parties are responsible for enforcing this order with respect to their own witnesses.

### F. Witnesses

Defendants did not object to the witnesses identified on Mr. Johnson's witness list. Dkts. 176, 188.

Mr. Johnson objected to eight of the witnesses identified on Defendants' witness list. Dkts. 182, 193. During the final pretrial conference, Defendants withdrew witnesses Brayden Rhoads, Jeremy Wolke, Mark Fagg, and Gary McMillin from their witness list. Mr. Johnson then agreed that he does not object to the testimony of Samantha Holcomb and Michelle Martin to the extent their testimony will speak to their personal observations and will not be cumulative. Mr. Johnson then maintained his objections to witnesses Justin Adkinson and Matthew Keyes.

The Court **GRANTED** Mr. Johnson's objections to the extent that Defendants had modified their witness list in response to his objections. But witnesses Justin Adkinson and Matthew Keyes will be allowed to testify, based

on Defendants' proffer that these witnesses' testimony will not be cumulative, will be relevant, and will stay within their personal knowledge.

Subject to the parties' agreement and the Court's rulings during the final pretrial conference, the witnesses identified by the parties on their witness lists may be called to testify at trial. *See* dkts. 176, 182. Those witnesses' testimony will be limited to the subjects identified by the parties on their lists and as discussed at the final pretrial conference. Counsel shall seek leave of Court outside the jury's presence before eliciting testimony beyond this scope.

## G.  Exhibits

The parties filed a joint exhibit list with objections. Dkt. 200. The Court ruled on those objections during the final pretrial conference.

### a.  Mr. Johnson's exhibits

Defendants objected to Mr. Johnson's medical records and healthcare request forms at exhibits 1–10. That objection was **OVERRULED** for the reasons stated in open court. These exhibits are admissible, subject to the parties conferring about appropriate redactions to exclude irrelevant and prejudicial information.

Defendants also objected to Mr. Johnson's grievance forms at exhibits 11–15. That objection was **SUSTAINED** for the reasons stated in open court. Mr. Johnson may not seek to admit these exhibits without first seeking leave of the Court outside the presence of the jury.

### b. Defendants' exhibits

Mr. Johnson objected to the use of force and incident reports at exhibits 50–65 and 67. During the final pretrial conference, Defendants withdrew exhibits 50–51 and 57–59, the use of force and incident reports from witnesses they no longer plan to call at trial. The Court **SUSTAINED** Mr. Johnson's remaining objections to the use of force and incident reports at exhibits 52–56, 60–65, and 67 for the reasons stated in open court. Defendants may not seek to admit these exhibits without first seeking leave of the Court outside the presence of the jury, but they may be used for refreshing recollection.

Defendants also proffered during the final pretrial conference that Mr. Johnson's medical records at exhibits 68–84 will only be used for impeachment evidence and will not be admitted as substantive evidence.

## H. Verdict form

In the absence of an objection raised on the record at or before the instructions conference, the Court will use the verdict form jointly tendered by the parties. Dkt. 163.

## I. Motions in limine

Both parties filed motions in limine, dkts. 174 and 180, and responses, dkts. 191 and 194. During the final pretrial conference, the Court ruled on all motions in limine except Defendants' motion number 10, which the Court took under advisement.

Motions in limine are designed to "streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the

5

consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Courts "have broad discretion in ruling on evidentiary questions . . . on motions *in limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). If evidence "clearly would be inadmissible for any purpose," the Court may issue a pretrial order in limine excluding it from further consideration. *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). But orders in limine are preliminary and "subject to change when the case unfolds" because actual testimony may differ from a pretrial proffer. *Luce v. United States*, 469 U.S. 38, 41 (1984).

With respect to evidence that is the subject of a motion in limine that is granted, such evidence shall not be referenced without prior leave of Court. If a party has a good-faith basis to believe that specific evidence subject to exclusion based on a motion in limine should be admitted based on developments at trial, the party shall raise its request for reconsideration of that issue with the Court outside the presence of the jury, preferably during a scheduled break so as to minimize wasting the jury's time.

  a. **Mr. Johnson's motions in limine**

Subject to reconsideration given the evidence and argument at trial, the Court's rulings on Mr. Johnson's motions in limine are summarized as follows:

| No. | Evidence | Ruling |
|---|---|---|
| 1 | Permit Mr. Johnson to attend trial without restraints | Granted |
| 2 | Permit Mr. Johnson to appear in civilian clothes | Granted |
| 3 | Evidence of Mr. Johnson's prior convictions | Granted |
| 4 | Prevent Defendants from referring to Mr. Johnson and witnesses by status instead of name | Granted in part |

| 5 | Evidence of negative career ramifications for Defendants | Granted |
| 6 | Evidence of negative financial ramifications for Defendants, the State, or taxpayers | Granted |
| 7 | Evidence of other lawsuits, grievances, and complaints filed by Mr. Johnson | Granted |
| 8 | Evidence of non-party witness Jerry Brown's prior convictions | Granted |

### i. Unopposed motions

Six of Mr. Johnson's motions in limine—numbers 1, 2, 5, 6, 7, and 8—were unopposed. Those motions were **GRANTED** at the final pretrial conference. Defendants must seek leave of the Court outside the jury's presence before eliciting testimony on those topics.

Mr. Johnson will be allowed to attend trial without handcuffs, but his legs will be shackled. When he is sitting at counsel's table, the table's skirting will cover the shackles so the jury cannot see them. When he testifies, the Court will ask the jury to leave the courtroom when he takes and leaves the stand. Mr. Johnson will also be allowed to appear in civilian clothes, which his counsel is responsible for providing.

### ii. Opposed motions ruled on at final pretrial conference

The Court **GRANTED** motion in limine number 3 to the extent that Defendants are prohibited from eliciting testimony about Mr. Johnson's prior convictions, including his 2024 conviction for resisting law enforcement with a vehicle, without first seeking leave from the Court.

The Court **GRANTED IN PART** motion in limine number 4 to the extent Defendants' counsel must instruct their witnesses to refer to Mr. Johnson and

7

other incarcerated witnesses by their name, and the Court will remind defense witnesses to refer to Mr. Johnson and other incarcerated witnesses by their name and not "inmate" or "offender."

### b. Defendants' motions in limine

Subject to reconsideration given the evidence and argument at trial, the Court's rulings on Defendants' motions in limine are summarized as follows:

| No. | Evidence | Ruling |
|---|---|---|
| 1 | Evidence of unrelated complaints, discipline, or other lawsuits against Defendants | Granted |
| 2 | Evidence of dismissed claims in this matter | Granted |
| 3 | Evidence that John Crusie was a previously named defendant in this matter | Granted in part |
| 4 | Evidence of settlement negotiations | Granted |
| 5 | Evidence of Defendants' indemnification | Granted |
| 6 | Evidence of financial status of individual Defendants | Granted |
| 7 | Evidence of allegations of misconduct by State Agencies | Granted |
| 8 | Prohibit the "Golden Rule" argument | Granted |
| 9 | Evidence of attorneys' fees | Granted |
| 10 | Evidence of any alleged failure of the Indiana Department of Correction to properly train, discipline, or investigate the actions of Defendants | Granted in part |
| 11 | Lay witness testimony as to medical conditions, causation, diagnoses, or prognoses resulting from Defendants' actions or inactions | Granted |
| 12 | Testimony characterizing Defendants' use of force as "excessive" | Granted |
| 13 | Evidence of other incidents involving use of excessive force by Indiana Department of Correction or its correctional officers | Granted |
| 14 | Testimony from Jerry Brown outside of his personal knowledge | Granted |
| 15 | Testimony referring to a "code of silence," "blue wall," or similar terms | Granted |

### i. Evidence of any alleged failure of the Indiana Department of Correction to properly train, discipline, or investigate the actions of Defendants

Defendants seek to prohibit "any and all evidence regarding any alleged failure" of the Indiana Department of Correction ("IDOC") "to properly train, discipline, or investigate the actions of the Defendants in this case." Dkt. 180 at 6. They argue that this evidence would be "irrelevant to the issues in this case absent a *Monell* policy claim," and that "the prejudicial effect as well as jury distraction outweighs the probative value of any such evidence under Fed. R. Evid. 403." *Id.*

Mr. Johnson responds that he does not object to the extent this motion contemplates a *Monell* claim, as he "has not alleged a *Monell* claim, and does not seek to improperly raise such a claim at trial." Dkt. 194 at 6. However, Mr. Johnson objects to the extent that he should be allowed "to present evidence regarding Defendants' failures to heed their training for the admissible purposes under Fed. R. Evid. 404(b)." *Id.*

The first question is whether this evidence is relevant. Fed. R. Evid. 401. Generally, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or departmental regulations and policies. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). However, a knowing policy violation can be relevant to a constitutional claim that requires showing the defendant's subjective state of mind. *See Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (finding in Eighth Amendment context that "although violation of the prison's rule against public searches was not, by itself, a

violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that searches were done with an intent to harass" (internal citation omitted)); *cf. Estate of Carlock v. Williamson*, No. 08-3075, 2013 WL 12244415, at *7 (C.D. Ill. June 21, 2013) (reasoning a knowing departmental policy violation could be relevant to Fourteenth Amendment substantive due process claim containing subjective element).  So, the key inquiry for relevancy here is whether Mr. Johnson's two claims—Eighth Amendment excessive force and Fourteenth Amendment forced medical treatment—require proof of Defendants' subjective state of mind.

An Eighth Amendment excessive force claim contains a subjective element that requires the factfinder to "'inquire into [the] prison official's state of mind' to determine whether a constitutional violation has occurred; for, '[i]f the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify.'" *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  The Seventh Circuit has also held that in the Eighth Amendment context, the knowing violation of prison policies—although not dispositive—is relevant evidence.  *See Mays*, 575 F.3d at 650.  Accordingly, "[o]ne fact of consideration for the factfinder" in the Eighth Amendment excessive force context "is whether Defendants were acting pursuant to a policy or practice of the prison that, in the reasonable judgment of the officials, was needed to preserve security or order." *McCoy v. Mennerich*, 584 F. Supp. 3d 635, 642 (S.D. Ill. 2022).  So here, whether Defendants acted

10

pursuant to their training or to a policy when they used force is potentially relevant to Mr. Johnson's Eighth Amendment claim.

Likewise, a Fourteenth Amendment forced medical treatment claim requires proof that Defendants were deliberately indifferent to Mr. Johnson's right to refuse medical treatment.  *See Knight v. Grossman*, 942 F.3d 336, 343 (7th Cir. 2019).  "[A] defendant is deliberately indifferent to an inmate's right to refuse treatment if he or she 'subjectively knows' that the inmate did not consent to the treatment."  *Cooper v. Betancourt*, No. 21-cv-727-slc, 2023 WL 6314644, at *14 (W.D. Wis. Sept. 28, 2023) (quoting *Knight*, 942 F.3d at 343). Therefore, whether Defendants acted pursuant to their training or to a policy when restraining Mr. Johnson for the administration of Narcan is potentially relevant to Mr. Johnson's Fourteenth Amendment claim.

While whether Defendants' actions were consistent with IDOC policy and training may be relevant to Mr. Johnson's claims, any alleged *failure* by IDOC to properly train, discipline, or investigate Defendants, or that IDOC's policies were deficient, is not relevant since Mr. Johnson does not allege a *Monell* claim. The parties appear to agree on this point.  *See* dkts. 180, 194.

Finally, whether Defendants acted pursuant to a policy or training is subject to a Rule 403 analysis.  Fed. R. Evid. 403; *see Dixon v. Baldwin*, No. 19-cv-825-DWD, 2024 WL 5003069, at *6 (S.D. Ill. Dec. 6, 2024).  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury. . . ."  Fed. R. Evid. 403.

11

Here, evidence about whether the Defendants followed IDOC policy and training may present a risk of confusing the issues and misleading the jury since § 1983 only protects against constitutional, not policy, violations. *See Scott*, 346 F.3d at 760. But that risk does not substantially outweigh this evidence's probative value of the Defendants' subjective state of mind, which is relevant to both of Mr. Johnson's claims, as demonstrated above. And any prejudice that Defendants could arguably suffer from testimony on this point can be remedied with a limiting instruction given at the time of the testimony. It would instruct the jury that Mr. Johnson's testimony about whether Defendants followed or failed to follow IDOC policies and training can be considered only as evidence of Defendants' subjective state of mind. Counsel for Defendants shall raise this issue with the Court at the time they wish for the Court to give such a limiting instruction.

Accordingly, Defendants' motion in limine is **GRANTED IN PART**. Mr. Johnson may elicit testimony regarding whether Defendants were aware of and acted pursuant to IDOC policies and training, but he may not elicit testimony about whether the policies or training were inadequate.

### ii. Unopposed motions

Seven of Defendants' motions in limine—numbers 4, 5, 6, 7, 8, 9 and 14—were unopposed. Those motions were **GRANTED** at the final pretrial conference. Mr. Johnson must seek leave of the Court outside the jury's presence before eliciting testimony on those topics.

### iii.     Opposed motions ruled on at final pretrial conference

The Court **GRANTED** motion in limine number 1 to the extent Mr. Johnson is prohibited from eliciting testimony about complaints, discipline, or other lawsuits against Defendants unrelated to this case without first seeking leave from the Court.

The Court **GRANTED** motion in limine number 2 to the extent Mr. Johnson is prohibited from eliciting testimony related to claims already dismissed in this case without first seeking leave from the Court.

The Court **GRANTED IN PART** motion in limine number 3 to the extent the jury will be allowed to hear about Sgt. Crusie's actions that are relevant to Mr. Johnson's claims, as described by other witnesses.  The fact that Sgt. Crusie is deceased may be elicited at trial but not information regarding the fact that Sgt. Crusie was previously a defendant in this case.

The Court **GRANTED** motion in limine number 11 to the extent that Mr. Johnson, Mr. Brown, and Nurse Dana Lantrip may testify only to their personal knowledge of medical issues relating to Mr. Johnson.  Counsel for both parties will confer after Mr. Johnson's counsel meets with him to explain these guidelines.  Mr. Johnson's counsel is permitted to ask leading questions to the extent they deem it necessary and prudent to prevent his testimony from straying into areas of inadmissible expert testimony, such as causation and diagnoses.

The Court **GRANTED** motion in limine number 12 to the extent witnesses may not characterize force used on Mr. Johnson as "excessive" or

13

"reasonable."  Witnesses may only describe what they did and/or observed. Counsel shall instruct their witnesses accordingly.

The Court **GRANTED** motion in limine number 13 to the extent no evidence of other incidents involving the use of excessive force by IDOC or its correctional officers may be elicited without first seeking leave of the Court.

The Court **GRANTED** motion in limine number 15 to the extent Mr. Johnson may not elicit the use of the terms "code of silence" or "blue wall" without first seeking leave of the Court.

**J.    Discovery**

Mr. Johnson filed a motion for leave to reopen discovery, seeking the production of documents and information related to IDOC policies, procedures, instructions, training records, and training materials regarding use of force and responding to inmate health-related emergencies.  Dkt. [190].  That motion was **DENIED** at the final pretrial conference for the reasons stated in open court.

**K.    Testimony of Jerry Brown**

The Court **GRANTED** the joint motion to make witness Jerry Brown available to testify via Zoom.  Dkt. 204.  He will testify on the second day of trial, January 15, at 10:00 a.m.

**L.    Conclusion**

Mr. Johnson's motion to separate non-party witnesses at trial is **GRANTED**.  Dkt. [186].  Mr. Johnson's and Defendants' motions in limine are **GRANTED IN PART**.  Dkt. [174], [180].  Mr. Johnson's motion for leave to reopen discovery is **DENIED**.  Dkt. [190].

All evidentiary rulings are subject to reconsideration given the evidence and argument at trial. If a party believes that previously excluded evidence may be admissible given the evidence and argument at trial, the party shall first seek a bench conference with the Court and request permission before introducing the evidence.

**SO ORDERED.**

Date: 12/19/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

STEPHEN JOHNSON
136547
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Abigail Davis
Office of Indiana Attorney General
abigail.davis@atg.in.gov

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

Allison Mauk
Office of Indiana Attorney General
allison.mauk@atg.in.gov

Steven F. Pockrass
Ogletree Deakins
steven.pockrass@ogletreedeakins.com

Kathleen Sawtell
Ogletree Deakins
kathleen.sawtell@ogletreedeakins.com